## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CALLAIS CAPITAL MANAGEMENT, LLC** | * | **CIVIL ACTION NO. 17-12039** |
| | * | |
| | * | **SECTION "A"** |
| | * | |
| **VERSUS** | * | **JUDGE ZAINEY** |
| | * | |
| **BRIAN WILHITE, EMMALEIGH** | * | **MAGISTRATE NORTH** |
| **WILHITE, MICHAEL WORLEY,** | * | |
| **BRIAN MAY, JOHN DURHAM,** | * | |
| **BRETT FAVRE, DIMITRIOS** | * | |
| **BACHADAKIS, JON GREGG, MIKE** | * | |
| **HAMMER, PONTCHARTRAIN** | * | |
| **CAPITAL, LLC, AND ANDREW** | | |
| **GARCIA** | | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### PLAINTIFF'S OPPOSITION TO DEFENDANT DIMITRIOS BACHADAKIS'S RULE 12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND ALTERNATIVE RULE 12(b)(6) MOTION TO DISMISS

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff Callais Capital Management, LLC ("CCM"), and respectfully files the following Opposition to Defendant Dimitrios Bachadakis's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and Alternative Rule 12(b)(6) Motion to Dismiss. (Rec. Doc. 83; "Dismissal Motion"). In accordance with Local Rule 7.4, CCM respectfully submits the accompanying memorandum in support of this motion.

WHEREFORE, CCM respectfully requests this Court deny the Dismissal Motion with prejudice.

Respectfully submitted,

CARA STONE, LLP

*/s/ Adam V. Vickers*
William F. Large, Bar Roll No. 34837
Adam Vickers, Bar Roll No. 34992
Mark Graffagnini, Bar Roll No. 30527
650 Poydras Street, Suite 1130
New Orleans, LA 70130
(504) 265-9955 (phone/fax)
wlarge@carastone.com
avickers@carastone.com
mg@carastone.com
*Counsel for Callais Capital Management, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on 30th day of November, 2018, I caused to be served via the Court's

CM/ECF system the foregoing on all counsel of record.

*/s/ Adam V. Vickers*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **CALLAIS CAPITAL MANAGEMENT, LLC** | \* | **CIVIL ACTION NO. 17-12039** |
| | \* | |
| | \* | **SECTION "A"** |
| | \* | |
| **VERSUS** | \* | **JUDGE ZAINEY** |
| | \* | |
| **BRIAN WILHITE, EMMALEIGH WILHITE, MICHAEL WORLEY, BRIAN MAY, JOHN DURHAM, BRETT FAVRE, DIMITRIOS BACHADAKIS, JON GREGG, MIKE HAMMER, PONTCHARTRAIN CAPITAL, LLC, AND ANDREW GARCIA** | \* \* \* \* \* \* \* \* | **MAGISTRATE NORTH** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANT DIMITRIOS BACHADAKIS'S RULE 12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND ALTERNATIVE RULE 12(b)(6) MOTION TO DISMISS**</u>

This is a securities fraud and misrepresentation case. Plaintiff Callais Capital Management, LLC ("CCM"), a Louisiana company located in Thibodaux, Louisiana, invested $16,750,000.00 into Defendants' company, Sqor, Inc. ("Sqor"). Defendant Dimitrios Bachadakis ("Bachadakis") was on the Sqor board of directors at all material times. (Rec. Doc. 83, p. 9, herein, "Dismissal Motion"). Bachadakis visited Louisiana regarding Sqor business and spoke directly with CCM representatives in Louisiana multiple times to persuade CCM to invest in Sqor. (*See* Affidavit of Harold J. Callais, II, attached as Exhibit "1"; Affidavit of Mark J. Graffagnini, attached as Exhibit "2"; Rec. Doc. 42-2, Declaration of Dimitrios Bachadakis, ¶¶9-12). Bachadakis attended multiple conference calls and meetings with CCM representatives to elicit CCM's investments. *See id*. Bachadakis also sent his

3

representative Ralf Busse to Louisiana to speak and act for Bachadakis as his representative, employee and proxy to elicit CCM investments. (Exhs. 1 and 2).

Bachadakis has nevertheless moved to dismiss this action for purported lack of personal jurisdiction. (Rec. Doc. 83). CCM opposes Bachadakis's motion because this Court has personal jurisdiction over Bachadakis based on specific jurisdiction. Bachadakis exercised sufficient minimum contacts with the State of Louisiana such that this Court's exercise of jurisdiction over Bachadakis comports with traditional notions of fair play and substantial justice.

Bachadakis also seeks dismissal pursuant to Rule 12(b)(6). In support thereof, Bachadakis adopted and incorporated the Rule 12(b)(6) motion to dismiss filed by Defendants Brian Wilhite, Emaleigh Wilhite, Michael Worley, Brian May, John Durham, Brett Favre and Jon Gregg on March 16, 2018. (Rec. Doc. 83). Likewise, CCM adopts and incorporates its Opposition to the Defendants' Rule 12(b)(6) motion to dismiss, which CCM filed on November 25, 2018. (Rec. Doc. 97). CCM reasserts its position and supporting arguments stated in Rec. Doc. 97 as if fully set forth herein *in extenso* against Bachadakis.

This Memorandum shall otherwise set forth CCM's grounds for opposition to Bachadakis's motion to dismiss for lack of personal jurisdiction.

## I.      APPLICABLE LAW.

The plaintiff bears the burden of establishing personal jurisdiction by a *prima facie* showing when a non-resident defendant moves to dismiss for lack of personal jurisdiction. *See Schindler v. Dravo Basic Materials Co., Inc.*, No. CV 17-13013, 2018 WL 2290029, at *2 (E.D. La. May 18, 2018) (citing *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006)). The Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery" to determine whether it has personal jurisdiction. *Id*. (quoting

*Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)). The Court "must resolve all undisputed facts submitted by the plaintiff, as well as facts contested in the affidavits, in favor of jurisdiction." *Id*. (quoting *Luv N' care*, 438 F.3d at 469). "When a plaintiff makes its prima facie case that the defendant has 'minimum contacts' with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." *Id*. (quoting *Luv N' care*, 438 F.3d at 473).

The long-arm statute of the forum state must confer the authority to exercise personal jurisdiction. *See id*. (citing *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999)). The exercise of jurisdiction "must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment." *Id*. The Louisiana long-arm statute extends jurisdiction "to the full limits of due process." *Id*. (citing *Planet Beach Franchising Corp. v. C3Ubit, Inc.*, No. Civ.A. 02-1859, 2002 WL 1870007 at *2 (E.D. La. Aug. 12, 2002)). Therefore, this Court must determine whether the exercise of jurisdiction "would comport with the constitutional requirements of due process." *See id*.

Due process is satisfied when (1) the defendant purposefully availed himself of the benefits and protections of the forum by establishing "minimum contacts" with the state, and (2) "the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." *Id*. (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The "minimum contacts" inquiry is fact-intensive. *Id*. Courts consider whether "the defendant purposefully directed his activities towards the forum state, such that he could reasonably foresee being hailed into court there." *Id*. (quoting *Southern Marsh Collection, LLC. v. C.J. Printing Inc.*, Civil Action No. 14–495, 2015 WL 331919 at *1 (M.D. La. Jan. 26, 2015) (citing *Luv N' Care Ltd.*, 438 F.3d at 470)). "Minimum contacts may give rise either to 'specific' personal jurisdiction or 'general' personal

jurisdiction." *Id.* quoting (*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017)).

### Specific Jurisdiction Principles.

The Supreme Court confirmed the basic principles underlying specific jurisdiction in *Walden v. Fiore*, 134 S. Ct. 1115 (2014). This issue depends on facts: "the 'minimum contacts'" between the defendant and the forum state "necessary to create specific jurisdiction." *Id.* at 1121. Accordingly, the specific jurisdiction inquiry focuses on the "relationship among the defendant, the forum, and the litigation." *Id.* (citations omitted). In particular, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.*

The Fifth Circuit uses a three-part analysis to determine whether specific jurisdiction exists:

(1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Schindler*, No. CV 17-13013, 2018 WL 2290029 at *3 (quoting *Luv N' care*, 438 F.3d at 469). There must be an affiliation between the forum and the underlying controversy. *See id.* Temporal limitations do not apply to specific jurisdiction. *See id.*

The specific jurisdiction calculus in this case involves whether Bachadakis "purposefully availed himself of the of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state," and whether the exercise of jurisdiction over Bachadakis comports with "traditional notions of fair play and substantial justice." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). The purposeful-availment inquiry requires an examination of the facts involving Bachadakis's purposeful contacts with those involved with misrepresentations made

to CCM in Louisiana – including (as explained below) past and ongoing contacts with Sqor and activities in and directed toward Louisiana.

Moreover, agency relationships "may be relevant to the existence of specific jurisdiction." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. MDL 09-2047, 2017 WL 5971622, at \*21 (E.D. La. Nov. 30, 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 135, 134 S. Ct. 746, 759, 187 L. Ed. 2d 624, 759 n.13 (2014)). The Fifth Circuit holds that "a defendant may be found subject to personal jurisdiction as a result of the actions of an agent." *O'Quinn v. World Indus. Const.*, 68 F.3d 471 (5th Cir. 1995) (citing *Davis v. Asano Bussan Co.,* 212 F.2d 558, 563 (5th Cir.1954); *Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir.1990)).

## II.   ARGUMENT.

### A. This Court has specific jurisdiction because Bachadakis has sufficient minimum contacts with Louisiana.

The record contains facts which support this Court's exercise of personal jurisdiction. Bachadakis traveled to Louisiana multiple times for Sqor business and to discuss CCM's investments with CCM's representatives. Bachadakis also sent his representative to Louisiana to meet with CCM regarding its Sqor investments. Bachadakis attended telephone calls with CCM and participated in misrepresentations of Sqor's business to CCM. Bachadakis sought to prosper from the business he conducted with CCM in Louisiana vis-à-vis the CCM investments Bachadakis solicited for Sqor.

Bachadakis was a Sqor board member. (*See* Rec. Doc. 74, ¶70). Bachadakis was in charge of continuing efforts to attract European football (soccer) teams and enter into contracts with them for Sqor. *See id*. A substantial portion of anticipated revenues for Sqor would be through Bachadakis's efforts, as Sqor represented to CCM and investors that Sqor was making great strides in securing deals with clubs like Paris St. Germain, FC Barcelona, and Real Madrid (collectively, the "EU Teams"). *See id*. Furthermore, Bachadakis solicited potential investors in addition to CCM. *See id*.

As such, Bachadakis directly and indirectly controlled Sqor, its policy and had great influence over the direction of Sqor. *See id*. Bachadakis is therefore a control person and subject to this Court's jurisdiction.

Bachadakis admits he contacted CCM and visited Louisiana multiple times to conduct Sqor business and elicit CCM's investments. (*See* Rec. Doc. 83-2, Declaration of Dimitrios Bachadakis, ¶¶9-12). Bachadakis contacted CCM Managing Director and Chief Investment Officer Harold J. Callais, II ("Callais"), multiple times regarding Sqor business. (Exh. 1). Bachadakis attended a video conference call with Callais on or around October 13, 2015, which Callais attended in Thibodaux, Louisiana. *See id*. Bachadakis's employee and representative Ralf Busse ("Busse") also attended the call. *See id*. Bachadakis said he had influence with several professional European soccer teams including but not limited to the EU Teams. *See id*. According to Bachadakis, he would facilitate partnerships between Sqor and the EU Teams, which would increase Sqor's value and the value of CCM's investments therein. *See id*.

Bachadakis and Busse visited New Orleans in or around May 20-24, 2016, where they met with Callais to discuss Sqor business. (Exh. 1). Bachadakis assured Callais he would facilitate partnerships between Sqor and EU Teams, which would increase the number of Sqor users and, consequently, increase Sqor's value and the value of CCM's investments therein. *See id*.

Busse attended a meeting on behalf of Bachadakis as his representative and proxy in or around May 9-12, 2017, at the law office of Cara Stone, LLP. *See id*. Callais and Graffagnini attended the meeting. *See id*. Bachadakis, through Busse, again pledged to facilitate partnerships between Sqor and EU Teams, which would increase the number of Sqor users and, consequently, increase Sqor's value and the value of CCM's investments therein. *See id*. Bachadakis, through Busse, also

admitted that Sqor had misrepresented the number of users it had and the partnerships the Sqor representatives said they had cultivated or consummated. *See id*.

Thereafter, CCM learned from Bachadakis's associate or representative that the Sqor user growth metrics were misrepresented. (*See* Rec. Doc. 74, ¶46). Bachadakis, through Hammer and/or Wilhite, suggested his co-founder of CIP Holding, AG, may pursue a Sqor franchise license in China for up to $50 million. (*See* Rec. Doc. 74, ¶58). Bachadakis, through his representative, disclosed that the defendants had deceived CCM and routinely attempted to deceive other potential investors regarding Sqor's number of social media users and frequency of use. (*See* Rec. Doc. 74, ¶67; Exh. 1).

Callais attended a follow-up telephone conference from Thibodaux, Louisiana, with Bachadakis shortly after the May 2017 meeting. (Exh. 1). Bachadakis's purpose was to discuss Sqor business and attempt to obtain additional investments from CCM. *See id*. Bachadakis again pledged to facilitate partnerships between Sqor and the EU Teams, which would increase the number of Sqor users and, consequently, increase Sqor's value and the value of CCM's investments therein. *See id*. Based on the foregoing, CCM has reason to believe Bachadakis, directly and through Busse, conducted additional business in Louisiana.

Moreover, the investment agreements between CCM and Sqor which Bachadakis helped facilitate were signed in Louisiana by CCM. (*See* Rec. Doc. 30, Exhibits A-E). The torts Bachadakis allegedly committed took place in Louisiana, and the losses were felt by CCM in Louisiana.

Bachadakis submitted a new Declaration with the instant Dismissal Motion in which he added a paragraph to his original Declaration to address CCM's allegations of Busse's imputed acts. (Rec. Doc. 83-2 ¶13; Rec. Doc. 43-2). Bachadakis declared that Busse did not conduct business on his behalf as his agent or representative. (Rec. Doc. 83-2 ¶13). However, Bachadakis admitted that Busse

was affiliated with him. *See id.* Bachadakis did not dispute that Busse attended meetings between Sqor and CCM in Louisiana. *See id.* Bachadakis did not state that he clarified to CCM or anyone else that Busse was not his representative or agent. *See id.* Bachadakis did not explain why Busse attended the meetings if not as his agent or proxy. *See id.* Moreover, Bachadakis did not submit an affidavit from Busse disputing any jurisdictional facts or allegations.

The evidence establishes that Bachadakis has sufficient minimum contacts with Louisiana to support this Court's exercise of personal jurisdiction. *See*, *e.g.*, *Denmark v. Tzimas*, 871 F. Supp. 261, 268-269 (E.D. La. 1994) (a foreign defendant's single telephone call into Louisiana was sufficient to support personal jurisdiction).

**B. CCM's cause of action arises out of or results from the defendant's forum-related contacts.**

Bachadakis's participation in the fraudulent Sqor scheme was clearly intended to elicit CCM's investments. Bachadakis assured Callais he would facilitate partnerships between Sqor and EU Teams, which would increase the number of Sqor users and, consequently, increase Sqor's value and the value of CCM's investments therein. (Exh. 1; Exh. 2). Bachadakis made his misrepresentations to CCM while in Louisiana and during telephone calls with Callais while he was in Louisiana. (Exh. 1). The meetings and calls Bachadakis held with CCM in Louisiana helped convince CCM to invest in Sqor. (Exh. 1). Bachadakis also extended his misrepresentations to CCM through his representative and agent, Busse, while Busse was in Louisiana on his behalf. (Exh. 1). Indeed, the purpose of Bachadakis's communications to CCM was to elicit CCM's investments. Therefore, Bachadakis's contacts with CCM in Louisiana give rise to this lawsuit.

**C. This Court's exercise of personal jurisdiction is fair and reasonable.**

Courts consider the following to determine whether the exercise of personal jurisdiction is fair and reasonable:

(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.

*Schindler*, No. CV 17-13013, 2018 WL 2290029, at *4 (E.D. La. May 18, 2018) (quoting *Luv N' care*, 438 F.3d at 473).

This Court would be fair to exercise personal jurisdiction. Bachadakis has retained local counsel. Bachadakis has already attended at least one settlement conference with the Court via telephone. Louisiana has an interest in a claim that CCM, a Louisiana company, was harmed due to fraudulent solicitation of investments in Louisiana. Moreover, CCM has an interest in litigating its claims in Louisiana, where it was defrauded and suffered significant losses. Bachadakis does not suggest that any other state would be appropriate for litigation of the claims against him. This forum is the only reasonable forum in which to resolve CCM's claims.

III.     CONCLUSION.

CCM respectfully submits the Court should deny Bachadakis's motion to dismiss for lack of personal jurisdiction based on the foregoing.

In the alternative, CCM will also file a contemporaneous Motion for Leave to Conduct Jurisdictional Discovery and for Deferral of Consideration of Motion to Dismiss. CCM's motion will seek leave to conduct jurisdictional discovery if this Court determines the information at hand is not sufficient to establish personal jurisdiction over Bachadakis.

Respectfully submitted,

CARA STONE, LLP

*/s/ Adam V. Vickers*
William F. Large, Bar Roll No. 34837
Adam Vickers, Bar Roll No. 34992
Mark Graffagnini, Bar Roll No. 30527
650 Poydras Street, Suite 1130
New Orleans, LA 70130
(504) 265-9955 (phone/fax)
wlarge@carastone.com
avickers@carastone.com
mg@carastone.com
*Counsel for Callais Capital Management, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on 30th day of November, 2018, I caused to be served via the Court's

CM/ECF system the foregoing on all counsel of record.

*/s/ Adam V. Vickers*