## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CALLAIS CAPITAL<br>MANAGEMENT, LLC | * | CIVIL ACTION NO. 17-12039 |
| | * | |
| VERSUS | * | SECT. D      MAG. 5 |
| | * | |
| BRIAN WILHITE, ET AL. | * | VITTER/NORTH |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DIMITRIOS BACHADAKIS' MEMORANDUM IN SUPPORT OF RENEWED MOTION TO DISMISS PURSUANT TO FED. R. CIV. P 12(b)(2)

**MAY IT PLEASE THE COURT:**

This memorandum is respectfully submitted on behalf of Dimitrios Bachadakis ("Bachadakis"), in support of his renewed Fed. R. Civ. P. 12(b)(2) motion to dismiss the claims against him in the First Amended Complaint ("FAC") of Callais Capital Management ("CCM"), based on this Court's lack of personal jurisdiction over him.  Bachadakis submits this motion without waiving his rights to contest personal jurisdiction.  Alternatively, should the Court find a basis upon which to exercise jurisdiction over him, Bachadakis moves to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, on the grounds set forth in the Rule 12(b)(6) Motion to Dismiss filed by Defendants Brian Wilhite, Emmaleigh Wilhite, Michael Worley, Brian May, John Durham, Brett Favre and Jon Gregg (collectively, "the Sqor D&O Defendants"), which is incorporated herein by reference under Rule 10(c).

CCM has asserted causes of action against Bachadakis and the Sqor D&O Defendants for (1) fraud in connection with the sale of a security in violation of section 10(b) of the Securities Exchange Act of 1934 ("the '34 Act") and Securities and Exchange Commission Rule 10b-5; (2) violation of Louisiana state securities laws; and (3) negligent and intentional misrepresentation under Louisiana state law.

Bachadakis' contacts with this forum do not support general personal jurisdiction. He is not a citizen or resident of the United States or any state therein. He is a citizen of Greece and resides in Munich, Germany. He does not regularly visit the United States or conduct business with any person or entity that is a citizen or resident of the United States. Nor do Bachadakis' contacts support specific personal jurisdiction, as he has not purposefully directed any activity toward the United States that caused or contributed to the harm CCM alleges it suffered. Indeed, Bachadakis appears in only five paragraphs in the FAC: Paragraph 7, which simply alleges that he is domiciled and resides in Munich, Germany; Paragraph 46, which alleges CCM learned information from an associate of Bachadakis; Paragraph 58, which simply mentions Yao Wen as the co-founder of CIP Holding AG with Bachadakis; Paragraph 67, where CCM again mentions information it learned from "Bachadakis' representative"; and Paragraph 70, in which CCM alleges Bachadakis' role in Sqor, Inc. ("Sqor") was "to attract European football (soccer) teams and enter into contracts with them for Sqor." Dkt. 74, FAC, at ¶ 7,46,58,67,70.

Stated succinctly, CCM cannot point to sufficient contacts Bachadakis had with the United States to establish either general or specific jurisdiction. It is clear, however, that, in naming Bachadakis, CCM has resorted to the extraordinarily uncreative and rote pleading artifice of naming every officer and director in sight – regardless of a legitimate factual basis for doing so, and in Bachadakis' case, without adequate jurisdictional facts. Bachadakis moved on October 13, 2018 to dismiss the action against him because there is no basis to assert jurisdiction over him. Dkt. 83. CCM opposed that motion, in part, by requesting limited discovery into a legitimate jurisdictional basis, which the Court permitted. Dkt. 110; 112. That discovery is now complete. No facts that would warrant the exercise of jurisdiction over Bachadakis were

uncovered because none exist.  For these reasons, CCM's FAC against Bachadakis should be dismissed for lack of personal jurisdiction.

## I.       Factual Background

Bachadakis is not and has never been a citizen or resident of the United States.  He is a citizen of Greece and currently resides in Germany.  Declaration of Dimitrios Bachadakis in Support of Motion to Dismiss ("Bachadakis Decl."), at ¶ 3.  Bachadakis has never owned, rented, or leased any real or personal property in the United States.  He has never maintained a mailing address, telephone number, answering service, or an agent for service of process in the United States.  Further, Bachadakis has not received any formal degrees from any school or university in the United States, held a driver's license or professional licenses issued by or from the United States, registered to vote in the United States, received any income or remuneration from the United States, maintained a bank account in the United States, or filed any tax returns in the United States.  *Id.* at ¶¶ 4-5.

Bachadakis is a managing director of Yingli Green Energy South East Europe GmbH ("YGESEE").  *Id.* at ¶6.  YGESEE was, until recently, a company jointly held by Bachadakis, one other individual shareholder, and entities belonging to Yingli Solar, a company listed on the New York Stock Exchange. *Id.* YGESEE is now solely held by Bachadakis and one other individual shareholder.  *Id.*  Bachadakis is also a shareholder and board member of CIP Holding AG[1], which is organized and exists under the laws of, and maintains its principal place of business in, Germany.  *Id.* at ¶7.  A subsidiary of CIP Holding AG conducts a very small amount

---

[1] AG means Aktiengesellschaft, which means "stock corporation." *See* Barbey v. Unisys Corp., 2006 U.S. Dist. LEXIS 109475, *1, n.2 (E.D.Pa. May 10, 2006).

of business with three U.S. companies (e.g., approximately $50,000[2] total sales in FY 2016 to the United States, compared to roughly € 47 million in total overall sales), but Bachadakis has no involvement in the relationship generating those sales to the United States.  *Id.*  CIP Holding AG was a minority shareholder of Sqor and became involved in Sqor based on Sqor's attempts to expand into Europe.  *Id.* at ¶8.  Bachadakis was appointed to Sqor's board of directors in or about October or November of 2015. *Id.* Bachadakis otherwise does not regularly conduct business with any person or entity from the United States.  *Id.*

Bachadakis visited the United States six times between 2015 and 2017.  Bachadakis Decl., at ¶ 9.  His visits were as follows: July 6-10, 2015 (San Francisco); October 10-20, 2015 (San Francisco); February 8-14, 2016 (San Francisco and Los Angeles); May 20-24, 2016 (New Orleans); July 21-28, 2016 (San Francisco); and May 9-12, 2017 (New Orleans).  Each of these visits related to Sqor.  *Id.*  Bachadakis also visited the United States in 2002 as a trainee through his then-employer, and again in 2009 when he assisted Yingli Solar (not YGESEE) in its attempt to sell solar modules into the United States.  *Id.*

Bachadakis met with representatives from CCM during his visit to New Orleans in May of 2016.  Bachadakis Decl., at ¶10.  During that visit, Bachadakis also met with Michael Hammer, managing partner of Pontchartrain Capital, LLC, to discuss matters unrelated to Sqor. *Id.* at ¶9.  As it concerns CCM, on May 22, 2016, Bachadakis attended an informal "meet-and-greet" dinner at a restaurant attended by several Sqor representatives and several CCM representatives.  *Id.* at ¶10.  He also attended a May 23, 2016 Sqor board meeting for approximately 30-45 minutes, which was also attended by CCM representatives.  *Id.*  The dinner

---

[2] Approximately €44,000

and the board meeting were arranged by others at Sqor—primarily Brian Wilhite. *Id.*
Bachadakis did not initiate or plan those meetings and was invited to attend by Sqor. *Id.* There
were no in-depth discussions relating to Sqor business during the dinner in Bachadakis'
presence. *Id.* At the board meeting, other board members presented an update on Sqor's
business, including a review of the company's key performance indicators (KPIs), enterprise and
revenue pipeline, product and engineering roadmap, as well as an update on the activities in
Europe. *Id.* Bachadakis' participation in that meeting was minimal. *Id.* There were no in-depth
discussions in Bachadakis' presence at either the dinner or the board meeting about CCM
lending additional money to or investing in Sqor. *Id.* In the spring of 2017, Bachadakis
participated in three telephone calls with CCM representatives, during which the parties
discussed possible restructuring alternatives for Sqor. The last of these calls concerned high-
level discussions as to whether CCM and CIP Holding AG could work together to "save" Sqor.
*Id.* at ¶ 11.

Bachadakis is not and never was a Sqor shareholder. *Id.* at ¶ 8. He also has never sent
any personal representative or agent to the United States to conduct business on his behalf. *Id.* at
¶ 4. Contrary to CCM's assertion, Ralf Busse ("Busse") is not and has never been his agent,
representative, or proxy. Busse and Bachadakis are associated with CIP Holding AG, and they
both took on responsibilities with respect to Sqor's efforts to expand in Europe based on their
respective affiliations with CIP Holding AG. However, Busse has never represented
Bachadakis, and Bachadakis has never appointed Busse as his personal representative or agent,
in any matter relating to Sqor. *Id.*

As discussed more fully below, these facts demonstrate that Bachadakis lacks sufficient
contacts with the United States to support the Court's exercise of jurisdiction over him.

## II.     Legal Argument

### A.     CCM has Failed to Make a *Prima Facie* Showing that this Court has Personal Jurisdiction over Bachadakis.

Federal courts may exercise personal jurisdiction over a nonresident defendant of the forum in which the court sits only if doing so is consistent with the Due Process clause of the Fifth Amendment.  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001).   Absent such defendant's consent, personal jurisdiction over a nonresident defendant is proper only if the defendant has sufficient contact with the forum and exercising personal jurisdiction does not offend traditional notions of fair play and substantial justice.  *Id*. "Exercising personal jurisdiction over a nonresident defendant is consistent with due process when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice."  *Id.*  (internal citations and quotations omitted).  A defendant's "minimum contacts" with a state may establish either general jurisdiction or specific jurisdiction.  *Id.*  General jurisdiction exists – and a defendant may be haled into court in the forum regardless of where the acts giving rise to the litigation occurred – if the defendant's contacts with the forum are "sufficiently substantial, continuous, and systematic."  *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 217 (5th Cir. 2000).  Or as the Supreme Court iterated in *International Shoe,* the foreign resident's contacts with the forum must render him or her "essentially at home" there. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945).

If general jurisdiction is lacking, specific jurisdiction may be shown, but only if the defendant purposefully directed his activities toward the forum state or he purposefully availed

himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.  *Alpine View Co.*, 205 F.3d at 215 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  This requires more than random, fortuitous, or attenuated contacts with the forum, and cannot be based solely on the unilateral activity of another party. *Burger King Corp.*, 471 U.S. at 475.  Rather, the defendant's contacts must "proximately result from actions by the defendant *himself* and create a 'substantial connection' with the forum state." *Id.*  (citation omitted).

Procedurally, the party invoking the jurisdiction of a federal court bears the burden of establishing minimum contacts justifying the court's jurisdiction over a nonresident defendant. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999).  The plaintiff has the burden of making a *prima facie* case by alleging facts in the complaint and affidavits sufficient to establish jurisdiction over the nonresident defendants.  *Caldwell v. Palmetto State Savings Bank of S.C.*, 811 F.2d 916, 917 (5th Cir. 1987).  The Fifth Circuit applies a three-step analysis for the specific jurisdiction inquiry: (1) whether the defendant purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.  *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).  If the plaintiff carries its burden of establishing either of the first two prongs, the defendant carries the burden of establishing that the exercise of jurisdiction would be unfair or unreasonable.  *Id.*

When the defendant is a resident of a foreign country, "[g]reat care and reserve should be exercised" because a court is "extending [its] notions of personal jurisdiction into the

international field." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987) (internal citations and quotations omitted).

Because the '34 Act provides for nationwide service of process, the relevant forum is the United States. *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994).

### 1.      General Jurisdiction Cannot Be Established.

Bachadakis' contacts with the United States are neither sufficiently substantial, continuous, nor systematic to make him "essentially at home" in the United States. Establishing general jurisdiction is difficult and requires "extensive contacts" between a defendant and a forum. *Johnston v. Multidata Sys. Int'l Corp*, 523 F.3d 602, 609 (5th Cir. 2008) "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction . . . ." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002).

The exercise of general personal jurisdiction over an individual—such that the defendant may be haled into court in the forum regardless of where the acts giving rise to the litigation occurred—typically requires the individual to be domiciled in the forum. *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017); *Monistere v. Losauro*, No. 13-22, 2013 U.S. Dist. LEXIS 171608, at *8 (E.D. La. Dec. 4, 2013)(J. Barbier) ("An individual is subject to general personal jurisdiction in the state of his domicile."). While an individual may own more than one residence, he or she can have only one domicile. *Reich*, 858 F.3d at 63.

As noted by the Fifth Circuit in *Sangha v. Navig8 Shipmanagement Private Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018), establishing general jurisdiction over a foreign defendant is difficult. It requires careful analysis, informed by additional and heightened caution when the

foreign defendant, such as Bachadakis, is a resident of a foreign country.  *See Asahi Metal*, 480 U.S. at 115.

In *Sangha*, the Fifth Circuit concluded that a plaintiff failed to make a *prima facie* showing of general jurisdiction, based on the undisputed fact that the defendant was a foreign entity not incorporated in the forum, had no officers or shareholders in the forum, paid no taxes in the forum, and had no agent for service of process in the forum.  *Sangha*, 882 F.3d at 103. *Sangha* involved a dispute initiated by the former captain of a ship against the organization owning that ship.  *Id.* at 98.  The captain began working with the shipping organization in 2009, but left about six years later when the captain was involved in the collision of two shipping vessels.  *Id.* at 98-99.  The captain tried to dispute the organization's jurisdictional defenses with an affidavit testifying that the organization "conducted business routinely out of the Port of Houston" and that it "does substantial business from and in the Port of Houston in bunkering fuel from the Port of Houston and other ports on Texas to offshore Texas." *Id.* at 102. The Fifth Circuit concluded that even if the captain's statements in the affidavit were true, routinely conducting business out of the Port of Houston did not amount to "continuous and systematic" contacts sufficient to support general personal jurisdiction.  *Id.*

In *Holt Oil*, one of the few cases to find general personal jurisdiction over a nonresident individual, the Fifth Circuit found that an individual, domiciled in Oklahoma, "maintained constant and extensive personal and business connections with Texas throughout his adult life," and was therefore subject to general personal jurisdiction in Texas.  *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986).  Among other things, the individual obtained his college degree in Texas, owned real property in Texas, frequently visited his children in Texas, frequently vacationed in Texas, conducted a great deal of business in Texas, invested in, had

extensive business dealings with, and served as director of a Texas corporation, and was the sole shareholder of another corporation that owned significant real property interests in Texas and for which the defendant had frequently traveled to Texas for litigation purposes. *Id.* All of these factors, while supporting general personal jurisdiction, still rendered the issue "close" in the *Holt Oil* court's eyes.[3] *Id.* at 778.

Here, Bachadakis' contacts more closely resemble those found insufficient in *Sangha*, and come nowhere close to the extensive and repeated contacts barely found sufficient in *Holt Oil*. His contacts can be described as nothing more than sporadic and intermittent, nowhere near sufficiently substantial, continuous and systematic to support general jurisdiction. Like the defendant in *Sangha*, Bachadakis owns no property in the United States, has no agent for service of process, and he does not pay taxes or even maintain a mailing address, telephone number, or answering service in the United States. *Id.* at ¶¶ 4-5. Bachadakis is a citizen of Greece and resides in Germany. Dkt. 83-2, at ¶ 3. He has never been a citizen of, resided in, or owned any real or personal property in the United States, holds no degree, licensure or other certification from any United States agency or institution, has owned no interest in and has not conducted any personal business with any United States business entity, and has visited the United States only sporadically over the past 10 years. *Id.* at ¶¶ 4-9; Dkt. 124-3, at 3. In fact, Bachadakis' contacts are even less "continuous and systematic" than the facts proffered by the plaintiff and rejected in

---

[3] *Holt Oil* was decided before *Daimler AG v. Bauman*, 571 U.S. 117 (2014). In *Daimler*, the Supreme Court noted that it has "declined to stretch general jurisdiction beyond limits traditionally recognized," and that "general jurisdiction has come to occupy a less dominant place in the contemporary scheme." *Id.* at 132-33. The *Daimler* Court reaffirmed that for general personal jurisdiction to exist, the defendant's contacts must be "so continuous and systematic as to render the foreign corporation essentially at home in the forum State . . . i.e., comparable to a domestic enterprise in that state." *Id.* at 133, n. 11. While it is unclear whether the *Holt Oil* court would have reached a different outcome if it had *Daimler*'s guidance, it is certainly the case that *Holt Oil* involved substantially more contacts with more permanent connection to the forum than in this case.

*Sangha*, as Bachadakis does not regularly conduct any business within the United States or even with individuals or entities located within the United States. *Id.* at ¶¶ 6-8. Any contacts he has had with individuals or entities in the United States over the past ten years have been through his role as shareholder and board member of a German entity known as CIP Holding AG. *Id.* at ¶¶ 4-9; Dkt. 124-3, at 3.

In the face of this undisputed evidence, CCM makes no showing whatsoever that would support an inference that Bachadakis is or has ever been domiciled in the United States. Given the incredibly high standard set for general personal jurisdiction—especially as it applies to foreign citizens—there is no conceivably credible argument CCM can advance that would even approach satisfying that standard. Therefore, general jurisdiction over Bachadakis cannot be established.

> **2.    Bachadakis' Forum-Related Contacts do not Support Specific Jurisdiction.**

Likewise, Bachadakis' limited and sporadic contacts with this forum do not support specific jurisdiction because his contacts do not show that he—in his individual capacity—purposely directed his activities toward, or that he purposefully availed himself of, the privileges of conducting activities in the United States in a way that give rise to CCM's asserted claims against him. *See Monkton*, 768 F.3d at 433 (specific jurisdiction requires (1) defendant to purposely direct activities toward the forum state or avail itself of the privileges of conducting activities there and (2) plaintiff's cause of action must arise out of or result from defendant's forum-related contacts). "[W]hen specific jurisdiction is premised on fraudulent actions aimed at the forum, the pleading must allege specific facts with requisite particularity." *Bonvillain v. La. Land & Exploration Co.*, 702 F. Supp. 2d 667, 682 (E.D. La. 2010).

CCM does not allege sufficient contacts by Bachadakis to establish specific personal jurisdiction because it cannot do so.  First, Bachadakis did not purposely direct any personal activities toward the United States or avail himself of the privileges of conducting activities there as it relates to the allegedly fraudulent misrepresentations in CCM's FAC.  Nor did Bachadakis make any false statements or authorize or ratify the making of any false statements alleged in CCM's FAC.  Bachadakis Decl., at ¶ 13.  Consistent therewith, CCM does not allege that Bachadakis made any false statements or authorized or ratified any false statements made to its representatives.  Dkt. 74, FAC.  CCM has not because it cannot.

Indeed, CCM mentions Bachadakis in the FAC by name only in five paragraphs (which allege his citizenship and residency, mention his co-founder/partner, discuss information learned from an associate/representative, and allege only his involvement in Sqor's efforts to contract with European soccer clubs).  FAC, at ¶¶ 7, 46, 58, 67, 70.  Moreover, Bachadakis did not join the Sqor board of directors until October or November of 2015, which was three or four months *after* CCM alleges it entered into the July 31, 2015, Loan and Security Agreement – the initial transaction between CCM and Sqor that is the subject of this lawsuit. *Cf.* Dkt 1, Complaint, at ¶ 18 *with* Bachadakis Decl., at ¶ 8.  CCM's second transaction with Sqor, the first Supplement to the Loan and Security Agreement, was confected on the same day that Bachadakis first participated in a Sqor board meeting.  *Id.*  CCM does not specifically allege that Bachadakis had any involvement in those two transactions—indeed, CCM does not specifically allege that Bachadakis had *any* involvement in *any* of CCM's transactions with Sqor.  Those fatal pleading deficiencies make it impossible to determine from the FAC what, precisely, CCM is alleging Bachadakis did that would support the exercise of specific jurisdiction over him, and preclude

any argument from CCM that Bachadakis engaged in any wrongful conduct aimed at the United States.

### a. The fiduciary shield doctrine precludes personal jurisdiction over an entity's officers and employees predicated merely upon jurisdiction over the entity itself.[4]

Bachadakis' most notable contact with the United States is his directorship on Sqor's board.  But his status as a director is not sufficient to support this Court's exercise of jurisdiction over him because personal jurisdiction over an entity's officers and employees may not be predicated merely upon jurisdiction over the entity itself.  *See*, *e.g.*, *Calder v. Jones*, 465 U.S. 783, 790 (1984) (a corporate representative's contacts with a forum "are not to be judged according to their employer's activities there.").

The fiduciary shield doctrine holds that "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual even though the state has *in personam* jurisdiction over the corporation."  *Stuart v. Spademan*, 772 F.2d 1185 at 1197 (5th Cir. 1985).  This is true in matters involving either state or federal law.  "Under both Louisiana and federal law, the 'fiduciary shield doctrine' provides that 'the acts of a corporate officer in his corporate capacity cannot form the basis for jurisdiction over him in an individual capacity.'" *Hudleston v. Rin Tin Tin, Inc.*, No. 11-1427, 2011 U.S. Dist. LEXIS 111091, at *5-6 (W.D. La. Sep. 1, 2011) (citing *Southeast Wireless Network, Inc., v. U.S. Telemetry Corp.*, 954 So.2d 120, 128 (La. 2007) and *General Retail Services, Inc. v. Wireless*

---

[4] The cases discussing the various principles *infra* II.A.2.a-b deal with both general and specific personal jurisdiction.  Bachadakis discusses these cases in the context of specific jurisdiction, but in so doing Bachadakis does not mean or suggest the cases cannot or should not inform the outcome on both inquiries—but specifically embraces their applicability in both contexts.  Bachadakis only chose to develop them in the discussion of specific jurisdiction for convenience and because the analysis lends itself to better development of the relevant facts in the context of specific jurisdiction.

*Toyz Franchise, L.L.C.*, 255 Fed.Appx. 775, 795 (5th Cir. 2007)).  The doctrine applies not only to corporate officers, but also to all those acting within their corporate capacity.  *See Gen. Retail Servs.*, 255 F. App'x at 795.  This includes directors.  *See, e.g. Ragan & Massey, Inc. v. Voluntary Purchasing Grps, Inc.*, 2009 U.S. Dist. LEXIS 89063 at *6 (E.D. Tex. Sept. 28, 2009) (holding that a corporate director's presence at ten board meetings in Texas was insufficient to confer personal jurisdiction) (citing *Shaffer v. Heitner*, 433 U.S. 186, 215 (1997)).

In *Schultz v. Moser Engine Serv.*, No. SA-16-CV-738-OLG, 2017 U.S. Dist. LEXIS 222764, at *13 (W.D. Tex. Mar. 13, 2017), the Western District Court of Texas applied the fiduciary shield doctrine to prevent the exercise of jurisdiction over the secretary and treasurer of a company for claims brought under the Fair Labor Standards Act.[5]  The defendant was a resident of Wyoming who travelled to Texas three times a year as part of her work as a corporate officer of the company.  *Id.* at *10.  Prior to her visits in her corporate capacity, the defendant had only visited Texas on one occasion to attend a sporting event.  *Id.*  She had never lived in Texas, owned real or personal property in Texas, or opened or maintained a bank account in Texas.  *Id.*  The court ultimately decided that plaintiff's jurisdictional allegations were "allegations unsupported by any evidence."  *Id.* at *11. Therefore, defendant's contacts with the State of Texas were "plainly insufficient" to establish personal jurisdiction.  *Id.*  The court held that the "fiduciary-shield doctrine directly rejects" any exercise of jurisdiction over the defendant

---

[5] In *Schultz*, the plaintiff alleged that the court had general jurisdiction over the defendant because of her corporate capacity.  But the court described defendant's visits to the forum state as "minimal" and "plainly insufficient."  *Schultz*, No. SA-16-CV-738-OLG, 2017 U.S. Dist. LEXIS 222764, at *13,15.  The number of visits the officer made, the majority of which were in corporate capacity, mirror Bachadakis' contacts with the United States.  Bachadakis does not use this case to suggest there is any possibility he is subject to general jurisdiction, but rather, that his contacts are minimal and protected by the fiduciary shield doctrine.

14

purely because "she [was] a registered corporate officer" of an entity over which the court did have jurisdiction. *Id.* at *16.

For a court to have jurisdiction over a corporate officer or director,  it must be based on the individual's personal contacts with the forum.  In *Donovan v. Grim Hotel Co.*, 747 F.2d 966 (5th Cir. 1984), the Fifth Circuit ultimately decided that the district court had personal jurisdiction over a corporate officer.  *Id.* at 972.  Unlike the defendant in *Schultz,* many of the corporate president's contacts were personal in nature.  While the court acknowledged the fiduciary shield doctrine, it ultimately decided the corporate president had done personal business in Texas because "he made personal loans to the Texas hotel corporations and personally signed loan agreements for the Texas hotel improvements." *Id.* at 973.  Thus, personal jurisdiction over the corporate president was proper.

Here, Bachadakis' visits and business transactions within the United States were not personal in nature and are therefore like those of the corporate officer in *Schultz*, and unlike those of the corporate president in *Donovan*.  Like the defendant in *Schultz,* Bachadakis's contacts were as director and representative of several entities.[6]  As stated above, Bachadakis

---

[6] The fiduciary shield doctrine also protects Bachadakis because his involvement with Sqor was only on behalf of CIP Holding AG. "It is always that I acted on CIP's behalf . . . . It was never myself.  So my only action and our only action was always and only on behalf of CIP. . . ." Declaration of Greg L. Johnson ("Johnson Decl."), ¶ 4, Ex. A, p. 45, lns. 9-15.  Bachadakis' also served on Sqor's board on behalf of CIP Holding AG.  *Id.* at Ex. A, p. 114, lns. 15-17 ("On the board of Sqor on behalf of CIP, it was only me. We had only one seat as CIP in this Sqor board.").  CIP Holding AG had a right to a board seat per its investment with Sqor. Bachadakis  Decl., at ¶ 8, Ex. A, p. 7. Under the Amended and Restated Voting Agreement, Bachadakis was designated by CIP Holding AG to serve on Sqor's board. Bachadakis  Decl., at ¶ 8, Ex. B, p. 2.  CCM has not asserted any claims that Bachadakis himself did anything wrong.  CCM's only theory of vicarious liability is control person liability, which depends on Bachadakis' status as a director of Sqor, not as an agent of CIP Holding AG.  Thus Bachadakis' contacts with the United States on behalf of CIP Holding AG are irrelevant, and if offered by CCM in support of a jurisdictional argument would be legally attenuated for the additional reason that CCM has asserted no claims against CIP Holdings AG.  Thus, any attempted use by CCM of Bachadakis' contacts with the forum through CIP Holdings AG would reflect only the desperation CCM is experiencing in making its jurisdictional arguments, hopeful only that layering in a discussion of those contacts would create the appearance of a sufficient amalgam of contacts, despite their legal insignificance in this context.  Despite all of that, however, in the interests of full disclosure,  Bachadakis (footnote continued)

visited the United States six times between 2015 and 2017.  Bachadakis  Decl., at ¶ 9.  Each of

these visits related to Sqor, for which he served on Sqor's board of directors.  *Id.* at ¶ 8.  More

than ten years earlier, Bachadakis visited the United States as a trainee through his then-

employer and in 2009 when he assisted Yingli Solar in its attempt to sell solar modules into the

United States.  *Id.*  All of those visits involved the acts of a director or employee serving in his

corporate capacity.

Further, as previously discussed, CCM does not identify in its FAC any wrongful conduct

allegedly engaged in by Bachadakis.  At best, CCM attempts to allege – albeit inadequately –

that he was a control person.[7]  CCM does not allege that Bachadakis is a "primary participant[]

in an alleged wrongdoing intentionally directed at" CCM.  *Calder*, 465 U.S. at 790; *see also In

re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 351 (D. Md. 2004) (holding that

personal jurisdiction over foreign defendant can only be based on "direct personal involvement

in a tort committed in the forum state", not their status as corporate officers).  As the FAC and

the documents referenced therein demonstrate, by the time of his first in-person meeting with

CCM representatives, CCM had already purchased its Series A-1 preferred stock.  And even

---

puts forth the aforementioned facts in the appropriate legal context.  Even if Bachadakis' contacts on behalf of CIP Holding AG were relevant to CCM's claims, which they are not, Bachadakis would nevertheless be entitled to protection under the fiduciary shield doctrine, which disregards his contacts as a representative of CIP Holdings AG for the purposes of evaluating a basis for possible jurisdiction.  In fact, Bachadakis effectively has a double fiduciary shield argument as it pertains to his contacts with the United States.  His first layer of defense comes by way of his director status in Sqor.  This is backed up by the application of the fiduciary shield as to his status as an agent of CIP Holding AG in taking up the Sqor directorship.

[7] Assuming CCM's "control person" allegations extend to Bachadakis, its allegations in support of that theory are too vague and conclusory to support the theory itself and personal jurisdiction under that theory.  *Panda Brandywine Corp.*, 253 F.3d at 869.  The FAC, on its face, indicates that CCM did not intend to include Bachadakis as part of the defined "Sqor D&O Defendants" group.  *See* Dkt. 74, FAC, at ¶ 9.  Furthermore, to support control person liability, CCM must plead and prove that the alleged control person (1) had actual power or influence over the controlled person, and (2) induced or participated in the alleged violation.  *Dennis v. General Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990).  Even so, a party's status as an officer or director is insufficient to support control person liability.  *Id.*  In the FAC, CCM makes no specific, factual allegations that support its "control person" claim against Bachadakis.

assuming, without conceding, that the Loan and Security Agreement and the Supplements thereto constitute securities for purposes of CCM's federal securities law claims, CCM had already entered into the Loan and Security Agreement, and two of the Supplements thereto, by the time of that meeting.   It is thus unclear from CCM's FAC how any contact between Bachadakis and CCM could have given rise to the claims CCM now asserts against him.   CCM's attempt to include Bachadakis in this matter is a blatant overreach, which violates traditional notions of fair play and substantial justice.

Therefore, because of the fiduciary shield doctrine and CCM's failure to identify in its FAC any wrongful conduct allegedly engaged in by Bachadakis, CCM cannot rely on any of Bachadakis' visits or business transactions within the United States as the basis for specific personal jurisdiction over him.

### b. Bachadakis' electronic communications are insufficient contacts for the purpose of exercising specific personal jurisdiction

Based on the discovery conducted by CCM, CCM likely will emphasize Bachadakis' electronic communications (particularly in the form of e-mails) between himself and individuals within the United States in order to establish personal jurisdiction over Bachadakis.   Although Bachadakis had frequent e-mail contact with individuals in the United States related to SQOR business over the roughly two years he was on Sqor's board of directors.   As stated previously, CIP Holding AG—not Bachadakis—was a minority shareholder of Sqor and became involved in Sqor based on Sqor's attempts to expand into Europe.   Bachadakis Decl., at ¶ 8.   Bachadakis is a shareholder and board member of CIP Holding AG.   *Id.* at ¶ 6.   He was appointed to Sqor's board of directors as CIP Holding AG's representative in or about October or November of 2015.   *Id. at* ¶ 8.   As a member of Sqor's board, he would periodically communicate with other board

members and Sqor officers via e-mail or participate in remote board meetings via teleconferencing.  *Id. at*  ¶ 14.  However, any such reliance by CCM on those communications would be grossly overblown as such communications are woefully insufficient to form the basis of specific personal jurisdiction.

Many federal district courts, including the Eastern District of Louisiana, agree that electronic communications alone do not constitute the requisite minimum contacts sufficient for the purpose of exercising specific personal jurisdiction over a nonresident. This Court previously concluded that a defendant's emails to various casinos, standing alone, were insufficient to confer personal jurisdiction over the defendant.  *Golden v. Clear Advantage Mktg.*, No. 15-5769, 2016 U.S. Dist. LEXIS 199134, at *12 (E.D. La. Sep. 30, 2016) (J. Vance).  The Court's opinion was influenced by *Holt Oil*, 801 F.2d at 773, wherein the Fifth Circuit held that a Texas court could not assert specific jurisdiction over an Oklahoma resident who contracted with a Texas corporation despite "*extensive* telephonic and written communication" between the parties.  *Id.* at 778 (emphasis added).  *Golden* also noted that even if the contacts "had risen to the level of 'minimum contacts'" (which they did not), specific jurisdiction was still improper in that plaintiff "failed to make out a prima facie case supporting specific jurisdiction" because its claims did not arise out of or result from defendant's emails.  *Golden*, No. 15-5769, 2016 U.S. Dist. LEXIS 199134, at *14-15.

Other circuits and district courts share the same view. The Fourth Circuit recently affirmed a dismissal for lack of personal jurisdiction over two nonresident defendants. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273 (4th Cir. 2009).  The court determined that a handful of e-mails and telephone communications alone did not satisfy minimum contacts with the state of Virginia.  *Id*.

Also on point is a recent decision by the Eastern District of Missouri.  There, the court granted a Texas corporation's motion to dismiss where its only contacts with the forum state were by telephone, email, mail, and facsimile.  *NP Sterling Labs, Inc. v. Emergent Indus. Sols., Inc.,* No. 4:08CV1770MLM, 2009 U.S. Dist. LEXIS 337 (E.D. Mo. Jan. 6, 2009).  The district court observed that "[i]t is well established that the mere use of e-mail, faxes, and/or the telephone is insufficient to subject a party to personal jurisdiction." *Id*. at *12.

Given that even substantial electronic communications alone are insufficient to exercise personal jurisdiction over a defendant, those communications, if relevant at all to the analysis, must be coupled with other of the defendant's contacts to confer personal jurisdiction.  *See, e.g. CoStar Realty Info., Inc. v. Meissner,* 604 F. Supp. 2d 757 (D. Md. 2009) (e-mails directed into Maryland, *coupled with other activities*, established personal jurisdiction over Arizona defendant); *NP Sterling Labs,* No. 4:08CV1770MLM, 2009 U.S. Dist. LEXIS 337 ("mere use" of e-mail, faxes, and/or the telephone is insufficient for subjecting a party to personal jurisdiction).

Last, the law of the Fifth Circuit holds that "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws." *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026 (5th Cir. 1983) (citing *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 187-88 (5th Cir. 1978)).

In sum, courts look for an additional "plus factor" beyond electronic communication when determining whether a defendant is subject to specific jurisdiction.  Evidence of the requisite "plus factor" is completely absent with respect to Bachadakis.  The most glaringly and fatal missing factor with respect to Bachadakis is that CCM has not met its *prima facie* burden in

showing that its claims arose out of or resulted from Bachadakis' e-mails.  *Golden*, No. 15-5769, 2016 U.S. Dist. LEXIS 199134, at *14-15.

Bachadakis' electronic communications with individuals in the United States are not enough to form the basis of specific personal jurisdiction.  Specific jurisdiction cannot be established on the basis of his electronic communications related to Sqor.

### 3. An Agency Theory Does Not Expose Bachadakis to Specific Personal Jurisdiction in the United States.

CCM may attempt to impute personal jurisdiction on Bachadakis, a foreign citizen, by asserting that Busse served as Bachadakis' agent, representative, or proxy.  To the extent CCM contends that Busse's activities can confer personal jurisdiction over Bachadakis, CCM's attempt falls flat.

As the Supreme Court has explained, "[a] corporation is a distinct legal entity that can act only through its agents. . . . As such, a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there."  *Daimler*, 571 U.S. at 135 n.13 (2014) (citations omitted). Thus, "[t]he Fifth Circuit recognizes that for purposes of general personal jurisdiction an agency relationship permits the imputation of the contacts of the agent to the principal."  *In re Chinese Manufactured Drywall Prods. Liab. Litig*., 767 F. Supp. 2d 649, 670 (E.D. La. 2011); s*ee also Prod. Promotions, Inc. v. Cousteau,* 495 F.2d 483, 492 (5th Cir. 1974) (Fifth Circuit explicitly recognized that an agency relationship may be a function of jurisdiction over the principal.).  However, in order for such an imputation, a "plaintiff *must* establish a *general* agency."  *Chinese Manufactured*, 767 F. Supp. 2d at 670 *(*citing *Nolan v. Boeing Co*., 736 F. Supp. 120, 126 (E.D. La. 1990) (emphasis added)).

An agency relationship cannot be presumed – "it *must* be clearly established." *Nolan*, 736 F. Supp. at 126. A general agency exists when "the putative agent carries on substantial activities for the benefit of the principal*." Id.* The agent's services "must be so important to the corporate principal that if it did not have the stand-in to perform them, the corporation's own people would do it themselves." *Id.* The agent must "have broad executive responsibilities" and the relationship "must reflect a degree of continuity." *Id.* Finally, to sustain its burden of establishing personal jurisdiction on an agency theory, a plaintiff must present *prima facie* evidence of the existence of agency relationship by proof that the agent acted with "either actual or apparent authority." *Product Promotions*, 495 F.2d at 493.

In *Nolan,* the plaintiff advanced an agency theory as to why the Louisiana Eastern District Court should have personal jurisdiction over a French corporation with a principal place of business in Paris, France. The plaintiff contended that the co-venturers were the French corporation's agents and thus their contacts with the forum should be imputed to the French corporation. *Id.* However, the plaintiff failed to offer any evidence showing that the principal had made "overtures or inferences to anyone or that anyone relied on any such conduct." *Id.* According to the court, this failure to offer "prima facie evidence" was "fatal to plaintiff's argument." *Id.*

So, too, here. CCM has failed to meet its burden of establishing that a general agency relationship existed between Bachadakis and Busse. In only a single paragraph in the FAC does CCM even mention that Bachadakis had a representative, and fails to identify who that alleged "representative" was. Dkt. 74, FAC, at ¶ 67. Thus, per *Nolan*, CCM's failure to meet its *prima facie* burden—assuming it is understood to be attempting to predicate jurisdiction based on an agency theory—proves fatal to any argument of personal jurisdiction based on such a theory.

**B.     The Exercise of Specific Personal Jurisdiction over Bachadakis would be Unreasonable and Unfair.**

If the plaintiff carries its burden of demonstrating a nonresident defendant's contacts with the forum, the defendant then carries the burden of showing that exercising personal jurisdiction would be unfair or unreasonable, which involves analysis of the following factors: (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Wilson v. Belin*, 20 F.3d 644, 647 n.3 (5th Cir. 1994). The primary concern in this analysis is the burden on the defendant. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017).  Indeed, courts have recognized that subjecting a citizen and resident of a foreign country to litigation in the United States imposes a severe burden on that party. *Asahi Metal*, 480 U.S. at 114.

Here, even if CCM could carry its burden of establishing minimum contacts between Bachadakis and the forum, exercising personal jurisdiction over him would be unfair and unreasonable because he is a resident of Munich, Germany, who, per CCM's own allegations, did not engage in any conduct giving rise to the harm alleged in CCM's FAC.  He would therefore be required to conduct this litigation from a great distance, which under normal circumstances would require his repeated travel to the United States despite having no significant relevant connection to this forum. Those circumstances are exponentially magnified by the current world pandemic whose end is, at best, uncertain. Furthermore, as Bachadakis' involvement in Sqor was on behalf of CIP Holding AG, and only to the extent that Sqor was attempting to expand into sports markets in Europe, it is likely key witnesses with knowledge of

Bachadakis' activities in Europe on Sqor's behalf are located abroad, such that compelling their appearance at trial—or even their participation in depositions or document discovery—would be extremely difficult, if not impossible.

Furthermore, any defendant should ordinarily be present for trial of claims asserted against him or her. Traveling to a separate country for an extended trial under normal circumstances is particularly burdensome for a foreign defendant such as Bachadakis. Attending trial would be disproportionately burdensome under current circumstances given the global pandemic and stringent restrictions on travel. The current travel restrictions and limitations in place due to COVID-19 could prevent Bachadakis from traveling to the United States to attend trial in this matter. As of now, federal travel restrictions and limitations include Germany,[8] and it is uncertain whether Bachadakis would be able to attend trial in the United States under those guidelines. Though trial is set for March 2021, the uncertainty created by the COVID-19 pandemic creates substantial uncertainty of when travel between the United States and Europe will resume. It would be unreasonable and unfair to subject Bachadakis to this Court's jurisdiction if he cannot, as a practical matter, participate in his defense and attend trial.

Given these circumstances, it would be unfair and unreasonable to subject Bachadakis to any further legal proceedings in this Court.

### C.   Alternatively, CCM has Failed to State a Claim Upon which Relief may be Granted against Bachadakis.

Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Bachadakis incorporates by this reference as though fully set forth herein the Rule 12(b)(6) Motion to Dismiss by

---

[8]   https://www.whitehouse.gov/presidential-actions/proclamation-suspension-entry-immigrants-nonimmigrants-certain-additional-persons-pose-risk-transmitting-2019-novel-coronavirus/

Defendants Brian Wilhite, Emmaleigh Wilhite, Brian May, John Durham, Brett Favre and Jon Gregg, in its entirety, including the memorandum of points and authorities in support thereof, and the Appendix and exhibits in support thereof. *See* Dkt. 30.

As set forth more fully in the Sqor D&O Defendants' Rule 12(b)(6) Motion to Dismiss, CCM's Complaint suffers from various pleading deficiencies, and the effects of these deficiencies cascade through various essential elements of its cause of action.  It basis most of its claims on written instruments (tellingly, not attached to the complaint) that are not securities as defined under federal and state law, and the terms of such instruments – namely, a Loan and Security Agreement and three Supplements thereto – clearly demonstrate a commercial loan, not an offer or purchase of securities under applicable law.

Furthermore, while CCM alleges various false or misleading statements by one or more of the named Defendants, the alleged false or misleading statements are not alleged with sufficient particularity under Fed. R. Civ. P. 9(b) or the Private Securities Litigation Reform Act. CCM does not allege who the makers of the statements were, that the statements were made with scienter, why any other Sqor D&O Defendant could have "control person" liability for the alleged misstatements, or that the alleged misstatements caused CCM to suffer an economic loss. As it specifically concerns Bachadakis, as discussed above, he is mentioned by name only in five paragraphs, neither of which attribute any alleged misrepresentation to him, or otherwise indicate he participated in any of the allegedly wrongful conduct.

Indeed, most of the statements alleged are not actionable as a matter of law because reliance on them was expressly disclaimed by CCM, or they are immaterial statements on which a sophisticated investor – like CCM warranted it was – cannot reasonably rely. CCM's failure to

attach the documents in which the alleged false or misleading statements were made was likely motivated by a desire to mask these pleading deficiencies.

Thus, should the Court find a basis to exercise personal jurisdiction over Bachadakis, CCM's FAC nevertheless should be dismissed against him for these reasons, as more fully discussed in the Sqor D&O Defendants' Rule 12(b)(6) Motion to Dismiss.

## III.    Conclusion

For the reasons discussed herein, Bachadakis respectfully requests that the Court dismiss CCM's FAC against him and for all other relief deemed just and proper.

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

/s/ *Karen M. Dicke*
Karen M. Dicke (#24781)
Dustin L. Cooper (#37642)
400 Poydras Street, Suite 1300
New Orleans, Louisiana  70130
Tel:  (504) 322-4100
Fax:  (504) 754-7569
Email: Karen.Dicke@lewisbrisbois.com

AND

Greg L. Johnson (*admitted pro hac vice*)
Timothy J. Nally (*admitted pro hac vice*)
2020 West El Camino Ave, Suite 700
Sacramento, California 95833
Tel:  (916) 564-5400
Fax:  (916) 564-5444

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been delivered to all counsel of record on July 13, 2020, by ECF filing, by hand delivery, by telephonic facsimile transmission, or by depositing a copy of same in the United States Mail, first class postage prepaid, at their last known addresses of record.

/s/ *Karen M. Dicke*