UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CALLAIS CAPITAL MANAGEMENT, LLC** | * | **CIVIL ACTION NO. 17-12039** |
| | * | |
| **VERSUS** | * | **SECT. D      MAG. 5** |
| | * | |
| **BRIAN WILHITE, ET AL.** | * | **VITTER/NORTH** |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **DECLARATION OF DIMITRIOS BACHADAKIS**

1.  My name is Dimitrios Bachadakis. I am over the age of 21 years. I have been named as a defendant in the above-captioned litigation, although I have not appeared in this litigation so as to subject myself to the jurisdiction of this Court. Without waiver of my right to contest personal jurisdiction, I give this declaration in support of my renewed Motion to Dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction, and alternatively, the renewed Fed. R. Civ. P. 12(b)(6) motion to dismiss the FAC for failure to state a claim.

2.  The information contained in this declaration is based on my personal knowledge, and if called to testify in this matter, I could and would testify competently to the facts stated herein.

3.  I am a citizen of Greece and reside in Munich, Germany. I am not and have never been a citizen of the United States and have never maintained a residence there.

4.  I have never owned, rented, or leased any real or personal property in the United States. I have never maintained a mailing address, telephone number, answering service, or an agent for service of process in the United States. I have never received a driver's license from any state within the United States, and have never registered to vote in the United States. I have also never sent any personal representative or agent to the United States to conduct business on my behalf.

5. I have never received any formal degrees from any school or university located in the United States. I have never received or held a professional license issued by, from or in the United States. I have never received any personal income or remuneration from any entities or organizations within the United States, maintained a bank account in the United States, or filed any tax returns in the United States.

6. I am a managing director of Yingli Green Energy South East Europe GmbH ("YGESEE"). YGESEE was, until recently, a company I jointly held with one other individual shareholder and entities belonging to Yingli Solar, a company that was listed on the New York Stock Exchange. YGESEE is now solely held by me and one other individual shareholder. YGESEE does not transact any business in the United States or with any individuals or entities from the United States. None of YGESEE's business activities relate in any way to Sqor or CCM.

7. I am also a shareholder and board member of CIP Holding AG, which is organized and exists under the laws of and maintains its principal place of business in Germany. CIP Holding AG concentrates its business in Asia and the Europe and Middle East regions. In the interests of disclosure, CIP Services AG, a subsidiary of CIP Holding AG, sells industrial components to three customers into the United States. I am a member of the management board of CIP Services AG with overall operational responsibility for this company. The overall volume of CIP Services AG's sales into the United States was USD 15,860 (FY 2015), USD 51,896 (FY 2016) and USD 77,807 (FY 2017). During the same time period, the overall turnover of CIP Services AG amounted to EUR 44 million (FY 2015), EUR 47 million (FY 2016) and EUR 55 million (FY 2017). Because of the comparatively small size of the customer relationship with the three U.S. customers, I am not involved in any business dealings with those customers. And CIP Holding AG otherwise does not, at this time, regularly conduct business in the United States or with any individuals or entities from

the United States, although it is possible that some of its developing projects may involve investors from the United States, but I have not had any direct contact with any such potential investors (if they do exist). I do not transact business on CIP Holding AG's behalf in the United States or with any individuals or entities from the United States. Further, I have never personally held any assets of CIP Holding AG. My personal finances are kept separate from CIP Holding AG's finances and my individual financial obligations are not paid by CIP Holding AG.

8. CIP Holding AG was a minority shareholder of Sqor, Inc. ("Sqor"). I became involved in Sqor based on Sqor's efforts to expand into sports markets in Europe. Because of my status with CIP Holding AG, CIP Holding AG designated me as its representative on Sqor's board pursuant to the Preferred Stock Purchase Agreement and the Amended and Restated Voting Agreement between CIP Holding AG and Sqor. I joined Sqor's board in or about October or November of 2015. The first board meeting I attended was held on December 3, 2015. Nearly all of my personal activity relating to or on behalf of Sqor was conducted in Europe. I do not and have not received any personal remuneration from Sqor, nor was I nor am I a Sqor shareholder. A true and correct copy of the Series A Preferred Stock Purchase Agreement is attached hereto as **Exhibit A**. A true and correct copy of the Amended and Restated Voting Agreement is attached hereto as **Exhibit B.**

9. Between 2015 and 2017, I personally visited the United States on the following six occasions: July 6-10, 2015 (San Francisco); October 10-20, 2015 (San Francisco); February 8-14, 2016 (San Francisco and Los Angeles); May 20-24, 2016 (New Orleans); July 21-28, 2016 (San Francisco); and May 9-12, 2017 (New Orleans). Each of these visits related to Sqor. I visited the United States in 2002 as a trainee through my then-employer, and in 2009 when I assisted Yingli Solar (not YGESEE) in the attempt to sell solar modules into the United States. When I was in the

United States in May 2016, I also met with Mike Hammer (Managing Partner of Pontchartrain Capital LLC) in New Orleans to discuss the sale of solar modules through CIP Holding AG into the United States. Mr. Hammer also introduced me to PosiGen, a New Orleans solar company. Subsequently, I exchanged emails and had a conference call with PosiGen regarding potentially selling solar modules to PosiGen. Ultimately no solar modules were sold to either Mr. Hammer or PosiGen.

10. Of my visits to the United States identified above, I met with representatives from CCM during my visit to New Orleans in May of 2016. Those meetings were organized by Sqor management, primarily Brian Wilhite. I did not initiate those meetings, but was invited by Sqor to attend. On May 22, 2016, I attended an informal "meet-and-greet" dinner at a restaurant in New Orleans. That dinner was attended by several Sqor representatives and several CCM representatives and business partners. In my presence, there were no in-depth discussions of Sqor business at the dinner. On May 23, 2016, I attended a Sqor board meeting. This meeting was attended by CCM for approximately 30-45 minutes. During that time period, the Sqor team provided an update regarding Sqor's business. I did not prepare any of the agenda items for this meeting. My role was primarily passive. To the extent the meeting touched upon business activities by Sqor in Europe, I may have contributed. In my presence, there were no in-depth discussions either at the dinner or the board meeting about CCM lending additional money to or investing in Sqor.

11. In the spring of 2017, I participated in three telephone calls with CCM representatives, during which the parties discussed possible restructuring alternatives for Sqor. The last of these calls concerned high level discussions on whether CCM and CIP Holding AG could work together to "save" Sqor.

12. Aside from the foregoing interactions, and to the best of my recollection, the only other interaction I personally had with CCM was as a participant in a conference call during the Autumn of 2015, during which Sqor introduced CIP as a business partner for the purpose of developing business in Europe.

13. I have never made any false or misleading statements (to CCM or anyone else) regarding Sqor or its business. I am unaware of anyone on Sqor's behalf making any false or misleading statements (to CCM or anyone else) regarding Sqor's business, nor would I have ever authorized, ratified, or agreed with any representative of Sqor making any false or misleading statements regarding Sqor or its business. I make these statements to demonstrate that I never directed any alleged actionable statements to anyone – whether in Louisiana or elsewhere – that would form the basis of this Court's exercise of personal jurisdiction over me.

14. And as a member of Sqor's board, I periodically communicated with other board members and SQOR officers via email and occasionally participated in remote board meetings via teleconferencing.

15. I declare under penalty of perjury that the foregoing is true and correct. Executed on July 14, 2020.

_____
DIMITRIOS BACHADAKIS