**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


CALLAIS CAPITAL MANAGEMENT, LLC          CIVIL ACTION

VERSUS                                   NO. 17-12039

BRIAN WILHITE, ET AL.                    SECTION D (5)


<u>**ORDER AND REASONS**</u>

Before the Court is Defendant Dimitrios Bachadakis's Renewed Motion to Dismiss for Lack of Personal Jurisdiction.[1]  Plaintiff Callais Capital Management, LLC has filed an Opposition,[2] and Bachadakis has filed a Reply.[3]  After careful review of the parties' memoranda, the record, and the applicable law, the Court grants the Motion.

## I.   FACTUAL BACKGROUND

This is a securities fraud case arising out of investments in a digital media company which focused on sports.  As relevant here, the assertions in Plaintiff's First Amended Complaint[4] may be summarized as follows.  Sqor was a business which created a digital platform designed for sports fans.[5]  In July 2015, Sqor solicited Plaintiff Callais Capital Management ("CCM") to invest in Sqor.[6]  Over the course of

---

[1] R. Doc. 167.
[2] R. Doc. 177.
[3] R. Doc. 191.
[4] R. Doc. 74.  These facts are discussed in more detail in the Order the Court issues contemporaneously with this Order, in which it dismisses CCM's Complaint.
[5] R. Doc. 74 at 4 ¶ 16.
[6] *Id.* at 4 ¶ 17.

a year, CCM engaged in four transactions with Sqor, resulting in an investment of over $16 million.[7]  Plaintiff alleges that "[b]ecause it turned out that there was no imminent $25 million third party investment, and because there were no revenue generating deals, the value of Sqor at the time of investment was likely $0."[8]  On October 3, 2017, Sqor filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of California.[9]  Plaintiff has now filed the instant suit against various directors and managers of Sqor alleging claims for violations of Section 10(b) of the Securities and Exchange Act and Rule 10b-5, violations of Louisiana securities law, and negligent and intentional misrepresentation.[10]

The thrust of CCM's Complaint is that through various acts and omissions by Sqor's directors and management, as well as by the members Pontchartrain Capital, LLC (Sqor's investment bank), misled CCM into investing in Sqor.  CCM points to a variety of alleged misrepresentations and omissions made by representatives of Sqor, including a Business Plan[11] that CCM contends was riddled with inaccuracies and a "Brand Capabilities Deck"[12] that CCM similarly argues contained misleading statements.

One accusation that is particularly relevant to the instant Motion is CCM's allegation that Defendants misrepresented the likelihood that Sqor would enter into business developments or agreements with sports clubs and organizations.[13]   In

---

[7] *See id.* at 4-5 ¶¶ 18-21.
[8] R. Doc. 74 at 29-30 ¶ 86.
[9] *Id.* at 30 ¶ 87.
[10] *Id.* at 30-33 ¶¶ 89-99.
[11] *See* R. Doc. 74 at 10-15 ¶¶ 39-48.
[12] *Id.* 21-22 ¶¶ 61-63
[13] R. Doc. 74 at 16 ¶ 50.

particular, CCM alleges that Sqor touted its relationship with FC Bayern Munich, a soccer club.[14]  In 2015, Defendants Wilhite and Hammer provided an unsigned draft "Sports and Enterprise Agreement" between FC Bayern Munich and Sqor to CCM.[15] The agreement was described by Wilhite as "standard and used for all teams."[16]  But the finalized agreement—entered into after the LSA was signed—contained small but material changes that CCM contends did not bind FC Bayern to "anything meaningful."[17]

One board member and shareholder that CCM has sued is Dimitrios Bachadakis.  Bachadakis is mentioned by name only five times in the First Amended Complaint, in the following paragraphs:  (1) Paragraph 7, which alleges only that Bachadakis is a resident of Munich, Germany, (2) Paragraph 46, which alleges that CCM learned from Bachadakis's associate that data presented in the Business Plan was "phony;" (3) Paragraph 58, which mentions that Yao Wen, a co-founder of CIP Holding, AG[18] with Bachadakis, sought to do business in China and would not wish to engage with a prospective investor of Sqor's; (4) Paragraph 67, which alleges that Bachadakis's representative revealed to CCM that Defendants Brian Wilhite and Jon Gregg inflated Sqor's user numbers; and Paragraph 70, which alleges:

> Dimitrios Bachadakis . . . was a shareholder and board member of Sqor.  He was in charge of continuing efforts to attract European football (soccer) teams and enter into contracts with them for Sqor.  A substantial portion of

---

[14] *Id.* at 16 ¶ 51.

[15] *Id.* at 16-17 ¶ 52.

[16] *Id.*

[17] *Id.* at 17-18 ¶¶ 53-54.

[18] CIP Holding, AG is a company for which Bachadakis is a shareholder and board member.  CIP Holding, AG is also a shareholder in Sqor.

anticipated revenues for Sqor would be through Bachadakis'[s] efforts, as Sqor represented to CCM and investors that Sqor was making great strides in securing deals with clubs like Paris St. Germain, FC Barcelona, and Real Madrid.  Furthermore, Bachadakis solicited potential investors, including CCM.  As such, Bachadakis directly and indirectly controlled Sqor, its policy and had great influence over the direction of Sqor.  Bachadakis is therefore a control person.

Bachadakis moved to dismiss the claims against him for lack of personal jurisdiction.[19]  The Court allowed CCM to conduct jurisdictional discovery, and CCM has filed with the Court various documents, including Bachadakis's deposition transcript, that it argues support its claim that Bachadakis is subject to personal jurisdiction.  Many of these documents demonstrate that Bachadakis was involved with Sqor in his role as a director and as an investor on behalf of CIP Holding, AG.[20]  Some make clear that he was heavily involved in recruiting FC Bayern Munich into a business relationship with Sqor.[21]  Indeed, some indicate that Bachadakis had some involvement with CCM.  For example, on May 25, 2016, Wilhite emailed Bachadakis "It was so great seeing you.  I ended up having a good $ day.  Callais are really impressed and supportive."[22]  On April 11, 2017, Wilhite emailed Bachadakis again saying "I appreciate you working with Brian May to help get the Callais and all of us on the same team."[23]  And on April 25, 2017, as the company was nearing its end, Bachadakis wrote in an email that "I want to emphasize that Sqor needs a strong

---

[19] R. Doc. 83.

[20] *See* R. Doc. 177-2 at 25-33 (email from Bachadakis to Wilhite highlighting what he thought were flaws and strengths of Sqor); *Id.* at 237-241 (emails demonstrating that Bachadakis was on weekly calls to discuss the business); *Id.* at 180-204 (Board Minutes).

[21] *See, e.g., id.* at 51-57.

[22] R. Doc. 177-2 at 162.

[23] *Id.* at 257.

plan to be presented to the Callais.  For a 'moving forward' they are pivotal, since we need them to convert their debt to equity."[24]  CCM also includes the affidavit of Harold Callais of CCM, who described his interactions with Bachadakis and attested that "Bachadakis introduced himself as a director and/or officer of Sqor and represented that he would be working with Sqor in such capacity.  Bachadakis attempted to persuade me to influence CCM to invest in Sqor."[25]

Bachadakis now moves to dismiss the claims against him for lack of personal jurisdiction.[26]  He first argues that he is not subject to general jurisdiction because he is a citizen of Greece who lives in Germany and is not "at home" in the United States.  He next argues that his forum-related contracts do not give rise to specific jurisdiction.  Specifically, Bachadakis contends that the fiduciary shield doctrine precludes personal jurisdiction over him as a member of Sqor's board, particularly because his involvement with Sqor was on behalf of CIP Holding AG.  Bachadakis also argues that his electronic communications are insufficient to confer jurisdiction because there is no "plus factor" beyond those communications that make jurisdiction appropriate.  Bachadakis also avers that no agency theory can be the basis for personal jurisdiction, as general agency is required and an agency relationship cannot be presumed.  Finally, Bachadakis argues that it would be unfair and unreasonable to exercise personal jurisdiction over him as a foreign citizen, particularly during the COVID-19 pandemic.  In the alternative, Bachadakis argues that CCM has failed to

---

[24] R. Doc. 177-1 at 60.
[25] R. Doc. 177-3 at 3 ¶ 6.
[26] R. Doc. 167.

state a claim against him, and incorporates arguments from a separate Motion to Dismiss.

CCM has filed an Opposition.[27]  CCM argues that Bachadakis was a control person of Sqor, and therefore is automatically subject to personal jurisdiction.  CCM points to five instances which it argues demonstrate that Bachadakis was a primary violator of the fraud committed against it.  Plaintiff argues that Bachadakis's electronic communications are sufficient to confer personal jurisdiction as the "plus factor" that adds to Bachadakis's participation "in the fraud and the misleading statements made to induce Plaintiff to induce Plaintiff to invest in Sqor to fund his efforts to attract FC Bayern Munich and other European Sports Clubs."[28]  Plaintiff also argues that Bachadakis cannot assert a corporate shield doctrine, arguing that if the doctrine is applicable at all, it is applicable at the merits stage.  Plaintiff also cites to evidence that it contends demonstrates that Bachadakis cannot invoke the corporate shield defense.  CCM further avers that Bachadakis availed himself of United States law by negotiating to be on the board of the U.S. corporation and exercising control thereof, and that CCM's cause of action arises directly out of Bachadakis's forum-related contacts, including Bachadakis's misrepresentations to CCM while he was in Louisiana.  Finally, CCM suggests that it would be fair and reasonable to exercise personal jurisdiction over Bachadakis given Plaintiff's interest in this forum and Bachadakis's ability to litigate his interest here, including through a locally-hired attorney.

---

[27] R. Doc. 177.
[28] *Id.* at 17.

Bachadakis has filed a Reply.[29]  He argues that Plaintiff has not adequately pleaded control person liability and, in any event, he was not a control person of Sqor. Bachadakis discusses each of CCM's allegations and contends that the evidence fails to demonstrate what CCM argues it demonstrates.  Bachadakis also reiterates many arguments made in his opening Motion, including that Bachadakis did not purposefully avail himself of United States or Louisiana law, nor would exercise of personal jurisdiction be fair and reasonable.

## II.   LEGAL STANDARD

Without personal jurisdiction, the Court is powerless to proceed to an adjudication.[30] The plaintiff bears the burden of proof on a motion to dismiss for lack of personal jurisdiction.[31] Presenting *prima facie* evidence is sufficient for the plaintiff to meet her burden of proof.[32] The Court may exercise personal jurisdiction over a nonresident defendant if "(1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment."[33] "The Louisiana Supreme Court has held that '[t]he limits of the Louisiana Long-arm Statute and the limits of constitutional due process are now coextensive,' accordingly, 'the sole inquiry into jurisdiction over a nonresident is a one-step analysis of the constitutional due

---

[29] R. Doc. 191.

[30] *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).

[31] *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982).

[32] *See id.*

[33] *Eastern Concrete Materials, Inc. v. ACE American Ins. Co.*, 948 F.3d 289, 296 (5th Cir. 2020) (internal citation and quotation marks omitted).

process requirements."[34] "Because Louisiana's long-arm statute, La. R.S. § 13:3201, extends jurisdiction to the limits of due process, the Court need only consider whether the exercise of jurisdiction in this case satisfies federal due process requirements."[35]

Under federal due process requirements, the Court analyzes whether the nonresident defendant has certain minimum contacts with the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[36] The main focus of the inquiry of personal jurisdiction is "the relationship among the defendant, the forum, and the litigation."[37] Minimum contacts are contacts that "give rise to general or specific jurisdiction."[38] "Courts exercise general jurisdiction over any action where the defendant has "continuous and systematic general business contacts" with the forum state. If the contacts are less pervasive, courts may exercise specific jurisdiction in a suit arising out of or related to the defendant's contact with the forum."[39] The United States Court of Appeals for the Fifth Circuit reviews the issue of personal jurisdiction *de novo* and must accept the plaintiff's uncontroverted allegations and resolve in the plaintiff's favor all conflicts between the facts contained in the record.[40]

---

[34] *In re Chinese-Manufactured Drywall Products Liability Litigation*, 753 F.3d 521, 547 (5th Cir. 2014) (quoting *Petroleum Helicopters, Inc. v. Avco Corp.*, 513 So. 2d 1188, 1192 (La. 1987)).

[35] *Dickson Mar. Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999).

[36] *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (internal citation and quotation marks omitted).

[37] *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

[38] *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008).

[39] *Id.*, internal citations and quotation marks omitted.

[40] *Eastern Concrete Materials, Inc. v. ACE American Ins. Co.*, 948 F.3d 289, 295 (5th Cir. 2020).

## III.    ANALYSIS

### A.    Control Person Liability

The parties' briefing raises an important threshold question: Does the Court necessarily have personal jurisdiction over Bachadakis if CCM can demonstrate that he is a control person of Sqor?[41]  There is a split of authority as to the answer, and the Fifth Circuit has not addressed the question.  With little analysis, the Ninth Circuit held that "personal jurisdiction . . . exists if the plaintiff makes a non-frivolous allegation that the defendant controlled a person liable for fraud."[42]  Some district courts in this Circuit have followed that holding, including the case on which Callias Capital relies—*McNamara v. Bre-X Minerals, Ltd.*[43]

But there is better reasoned authority on the other side of this issue.  In *City of Monroe Employees Retirement System v. Bridgestone Corporation*[44] the Sixth Circuit held that "[t]he broad understanding of control person liability adopted by the securities laws cannot on its own support personal jurisdiction."[45]  The Sixth Circuit expressed reasonable concern with conflating liability (imposed here by a statute) with personal jurisdiction concerns (which arise from the Constitution).  Other courts

---

[41] The Court notes that it separately dismisses Plaintiff's claims premised on control person liability in its Order issued contemporaneously with this Order.  This discussion instead focuses on the legal concept of whether Plaintiff would automatically establish that the Court has personal jurisdiction over Bachadakis if it had properly alleged control person liability.

[42] *San Mateo County Transit Dist. v. Dearman, Fitzgerald and Roberts, Inc.*, 979 F.2d 1356 (9th Cir. 1992).

[43] 46 F. Supp. 2d 628, 636 (E.D. Tex. 1999); *see also Chamberlain v. Optima International Trust Co. Ltd.*, No. 05-394 2006 WL 8431988 (W.D. Tex. Sept. 5, 2006).

[44] 339 F.3d 651 (6th Cir. 2005).

[45] *Id.* at 667.

have come to similar conclusions.[46]  Although theoretically the same facts that would support a finding that Bachadakis is a control person would also support a finding of personal jurisdiction, the inquiries are separate.  The Court therefore does not consider whether Bachadakis is a control person at this stage, but only whether his actions give rise to personal jurisdiction sufficient to satisfy due process requirements.

**B.      Personal Jurisdiction**

Before determining whether Bachadakis has sufficient contacts with the forum so as to subject him to personal jurisdiction, it is helpful to determine what the "forum" is.  Usually when personal jurisdiction is considered, the "forum" is the forum state itself (in this case, Louisiana).  However, the Exchange Act allows for nationwide service of process.[47]  The Fifth Circuit has explained that "when a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based on a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant had minimum contacts with the United States."[48]  Accordingly, the relevant forum at issue in this case is the United States, not Louisiana alone.[49]

---

[46] *See In re Baan*, 245 F. Supp. 2d 129 (D.D.C. ); *FDIC v. Milken*, 781 F. Supp. 226, 234 (S.D.N.Y. 1991).

[47] 15 U.S.C. § 78aa (stating that "process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found . . .").

[48] *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (1994); *See also Luallen v. Higgs*, 277 F. App'x 402, 404 (5th Cir. 2008).

[49] The Court notes that the distinction between the United States as a forum and Louisiana as a forum does not alter the result (or much of the analysis) of this Order.

"Personal jurisdiction can be either general or specific."[50]  "General jurisdiction exists over a non-resident defendant when its 'affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.'"[51]  It is undisputed that Bachadakis is a citizen of Greece and a resident of Germany.[52]  CCM points to no affiliations that are sufficiently "continuous and systematic" to render Bachadakis at home in the forum.  Indeed, CCM does not seriously argue the Bachadakis is subject to general jurisdiction in its Opposition. The Court therefore finds that Bachadakis is not subject to general jurisdiction and focuses its inquiry on whether Bachadakis is subject to specific jurisdiction.

Courts in the Fifth Circuit apply a three-pronged inquiry to determine whether a party is subject to specific jurisdiction. A court must consider:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[53]

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable."[54]  The Court considers each prong in turn.

---

[50] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).
[51] *Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 546 U.S. 915, 919 (2011)).
[52] *See* R. Doc. 167-2 at 1 ¶ 3 (Bachadakis Declaration).
[53] *Seiferth*, 472 F.3d at 271.
[54] *Id.*

### 1. *Minimum Contacts and Relation to Cause of Action*

The Court considers the first two prongs of the specific jurisdiction test together, as they are closely interrelated. Before analyzing Bachadakis's minimum contacts, the Court addresses Bachadakis's argument that the Court cannot exercise jurisdiction over him because of the "fiduciary shield doctrine." That doctrine states that "[t]he general rule is that jurisdiction over an individual cannot be predicated on jurisdiction over a corporation; the fiduciary-shield which cloaks corporate agents and officers usually prevents a court from attributing actions made on behalf of the corporation to the agents or officers who performed them."[55] "Courts have, however, recognized an exception to this rule when the corporation is the alter ego of the agent or when the agent perpetrates a fraud."[56]

As with Plaintiff's arguments regarding controlling person liability, Plaintiffs arguments resisting the fiduciary shield doctrine rush to the merits before considering the threshold inquiry of jurisdiction. Plaintiff argues that "Bachadakis cannot assert a corporate shield doctrine defense to controlling person liability under the securities laws."[57] But this argument is neither here nor there—the Court has found that a controlling person inquiry is not the relevant inquiry, and Bachadakis does not invoke a fiduciary shield to controlling person liability on the merits, but rather invokes the doctrine as to his personal jurisdiction.

---

[55] *Intermed Laboratories, Inc. v. Perbadanan Geta Felda*, 898 F. Supp. 417, 420 (E.D. Tex. 1995) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985); *see also Hudleston v. Rin Tin Tin, Inc.*, No. 11-1427, 2011 WL 4502907, at *2 (W.D. La. Sept. 1, 2011).
[56] *Id.*
[57] R. Doc. 177 at 18.

The fiduciary shield doctrine does not end the inquiry here, as Plaintiff alleges Bachadakis engaged in fraud.[58]  But it does inform the minimum contacts on which the Court should focus.  Contacts related to Bachadakis's alleged fraud on CCM clearly relate to Plaintiff's claims and give rise to personal jurisdiction, but contacts solely attributable to Bachadakis's role as a director would be covered by the fiduciary shield doctrine.[59]  Here, a significant number of the contacts CCM relies on to establish minimum contacts are simply related to Bachadakis's role as a board member. For example, CCM points to board minutes[60] and emails demonstrating that Bachadakis had some involvement with the company.[61]  Most of these emails have nothing to do with CCM, and rather demonstrate only that Bachadakis had some involvement with Sqor, which is not unexpected given his position as a board member.

Indeed, Plaintiff misrepresents many of these documents.  For example, before Bachadakis was a board member, Brian Wilhite sent Bachadakis (and three others) an email stating: "I wanted to share some investment materials with you for your review."[62]  Plaintiff represents the "investment material" shared in this email is the Business Plan sent to CCM (though that is unclear from the email).  Bachadakis responds "thanks for your email and the information.  Looking forward to talk [sic]

---

[58] Indeed, the fraud exception would apply in equal force to any "double" fiduciary shield doctrine Bachadakis asserts as a result of his role as a manager of CIP Holding AG.  *See* R. Doc. 167-1 at 15 n.6.

[59] *See Intermed Laboratories*, 898 F. Supp. at 419-20.

[60] *See* R. Doc. 177-2 at 180-204.

[61] *See id.* at 61-160 (deposition excerpts excluded); 237-241.

[62] R. Doc. 177-2 at 11.

to you next Tuesday."[63]  The inference Plaintiff would have the Court draw from this innocuous exchange is that "Bachadakis directly participated in reviewing the investment materials provided to CCM" and that "Bachadakis participated in creating [the investment materials] to CCM."[64]  CCM seems to argue that an email demonstrating that Bachadakis (not then a board member) received a copy of the Business Plan means that the actively participated in manipulating and developing the Business Plan to deceive CCM.  This logic fails for a number of reasons.  First, CCM is mentioned nowhere in the email chain.  Second, there is no evidence that Bachadakis participated in developing the Business Plan.  Third, at this point Sqor wanted to enter a partnership with CIP (as demonstrated in the same email chain), so a far more reasonable inference is that the Business Plan was sent to help facilitate that partnership.

CCM also singles out a line in a June 2, 2015 email from Bachadakis in which he tells Wilhite that "Sqor has developed a platform that has no obvious novelties and lacks traffic, usage and awareness like similar others that exist."[65]  The inference CCM asks the Court to draw from this document is that Bachadakis knew that there were material problems with Sqor yet he fraudulently failed to advise CCM as much.[66]  But CCM uses ellipses to omit an important proviso to Bachadakis's statement.  Bachadakis also states: "[Sqor] has however passionate and motivated management and is timely good [sic] positioned to benefit from unfair market

---

[63] *Id.*
[64] R. Doc. 177 at 9.
[65] R. Doc. 177-2 at 26.
[66] *See* R. Doc. 177 at 11.

economics if it moves fast, correct [sic] and efficiently."[67]  That CCM attempts to stretch such innocuous evidence beyond its obvious context speaks volumes about the strength, or lack thereof, of CCM's argument.

Turning to an analysis of Bachadakis's interactions with CCM and minimum contacts that could give rise Plaintiff's claims of fraud, the Court finds the record thin. As an initial matter, Plaintiff points to no emails of consequence between Bachadakis and CCM, instead relying almost entirely on emails between Bachadakis and other Sqor officers.  The majority of the emails before the Court referencing CCM are sent *to* Bachadakis by Brian Wilhite, and are not authored by Bachadakis.[68]  As both parties acknowledge, courts often find that electronic communications in and of themselves do not give rise to personal jurisdiction, and instead require a "plus factor" in additional to the emails.[69]  Once again, CCM sprints into the merits, arguing that the "plus factor" here is Bachadakis's "participation in the fraud and the misleading statements made to induce Plaintiff to invest in Sqor to fund his efforts to attract FC Bayern Munich and other sports clubs."[70]

The email communications Bachadakis does send are not the smoking gun that CCM portrays them to be.  In an email Bachakasis sent Wilhite and other Sqor leaders dated April 25, 2017, which CCM portrays as "damning," Bachadakis discusses the current state of Sqor and the need for a reset.[71]  But this internal email

---

[67] R. Doc. 177-1 at 26.
[68] *See* R. Doc. 177-1 at 257, 162, 173.
[69] *See, e.g., Golden v. Clear Advantage Marketing*, No. 15-5769, 2016 WL 9651215, at *5-6 (E.D. La. Sept. 30, 2016).
[70] R. Doc. 177 at 17.
[71] R. Doc. 177-1 at 59.

is better viewed as Bachadakis pitching a way forward for the struggling company. Although it acknowledges weaknesses in Sqor, it's not clear evidence of fraud. Bachadakis does discuss Callais in this email, but only insomuch as "Sqor needs a strong plan to be presented to the Callais."[72]  Moreover, this email dated April 25, 2017, was sent well after CCM's final investment in Sqor, and so any plan presented to CCM at that point would not have been relied on by CCM in making an investment, and cannot the basis for CCM's claims.  This email therefore has at best a tangential relationship to CCM's claims and does not "crush[] [Bachadakis's] own defense on the jurisdiction issue and the merits of the case against him."[73]

CCM also points to other, brief emails to or from Bachadakis that reference CCM, none of which are sufficient to show that Bachadakis is subject to personal jurisdiction.  In one internal email between Bachadakis and Wilhite dated April 11, 2017, Wilhite said "I appreciate you working with Brian May to help get the Callais and all of us on the same team.  I do believe that is possible but we do need your help."[74]  Whatever help Bachadakis was offering to try and get CCM to invest more failed, and the date of this email, April 11, 2017, demonstrates that it can at best be tangentially related to CCM's claims.  In an email dated June 16, 2016, Bachadakis stated that it was "[n]ot so good to hear that from Callais" when told by Wilhite that CCM presented terms that he found unacceptable.[75] This offhand statement doesn't demonstrate any effort to defraud CCM.  And in an email dated July 28, 2015, Wilhite

---

[72] *Id.* at 60.
[73] *Id.* at 13.
[74] R. Doc. 177-2 at 257.
[75] R. Doc. 177-2 at 169.

wrote to Bachadakis "[i]f you are able to secure the FCB agreement tomorrow, it will be a huge help to me and finalizing the $6MM funding."[76]   Bachadakis responded: "Understand! Will do my best to get it ASAP!"[77]   This email may be the most compelling email evidence that CCM has of Bachadakis's involvement with CCM and is the email most directly related to CCM's claims.   Yet it is insufficient to give rise to personal jurisdiction here.   It is an internal email between Wilhite and Bachadakis essentially asking Bachadakis to do what he was brought onto the board of Sqor to do, namely, facilitate an agreement with FC Bayern.   That Bachadakis was informed that that task may impact Wilhite's separate negotiations with CCM does not mean that Bachadakis's actions were directed toward CCM.

In short, CCM largely relies on internal company emails between Bachadakis and other corporate officers to argue that the Court should exercise specific personal jurisdiction over Bachadakis.   Moreover, CCM misrepresents these communications, and asks the Court to draw unnatural inferences from these internal exchanges.   At bottom, CCM argues that because Bachadakis sent internal emails that vaguely relate to CCM, and because CCM resides in the forum, Bachadakis necessarily subjected himself to jurisdiction here.   That is plainly insufficient.[78]   Accordingly, the Court fails to find a "plus factor" such that Bachadakis's emails subject him to personal jurisdiction in this forum.

---

[76] R. Doc. 177-1 at 25.

[77] *Id.*

[78] *See Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) ("An exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of [the forum's] law. Otherwise, jurisdiction could be exercised based only on the fortuity that one of the parties happens to reside in the forum.") (internal citations omitted).

Having determined that Bachadakis's emails are insufficient for the Court to exercise personal jurisdiction over Bachadakis, the Court turns to the only other contacts Bachadakis had with the forum: personal visits to the United States and a 2015 skype call with CCM.

The details of the skype call are disputed. Bachadakis states that he was "a participant" in the call "during which Sqor introduced CIP as a business partner for the purpose of developing business in Europe."[79] In his affidavit, Harold Callais states that Bachadakis introduced himself as a board member of Sqor and attempted to persuade CCM to invest in Sqor, noting that he would "facilitate partnerships between Sqor and multiple professional European football or soccer teams."[80] In his own affidavit, Bachadakis acknowledges that he visited the United States six times between 2015 and 2017 for short periods related to Sqor.[81] Five of these six trips did not relate to dealings with CCM.[82] The only meeting Bachadakis had with CCM during his trips to the United States was during his trip in May of 2016.[83] The details of this trip are also disputed. Bachadkais states that his "role was primarily passive."[84] In his affidavit, Harold states that he met with Bachadakis who attended a meeting "as a board director and/or officer of Sqor" and that "Bachadakis assured me he would facilitate partnerships between Sqor and the EU teams. . . ."[85]

---

[79] R. Doc. 167-2 at 5 ¶ 12.
[80] R. Doc. 177-3 at 3.
[81] R. Doc. 167-2 at 3-4 ¶ 9.
[82] *Id.*
[83] *Id.* at 4 ¶ 10.
[84] *Id.*
[85] R. Doc. 173-3 at 3-4 ¶ 7. The Court notes that Harold Callais's affidavit also references a meeting with Bachadakis in May 2017, *see id.* at 4 ¶ 8, and Bachadakis references three phone calls with CCM

On these disputed facts, Bachadakis's skype call and sole meeting in the United States with CCM in May of 2016 (after three of CCM's four investments) are insufficient to merit exercise of personal jurisdiction over Bachadakis sufficient to satisfy due process requirements.  Further, CCM acknowledges (in fact, emphasizes) that Bachadakis participated in the meetings in his role as a board member, so the fiduciary shield doctrine is again at play.  It is true that "a single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted."[86]  But even when Defendants have visited the relevant forum, courts have found personal jurisdiction lacking, particularly in the business context when the vast majority of the business is done elsewhere.[87]  Accordingly, the Court finds that Bachadakis did not have sufficient minimum contacts with the forum related to CCM's claims such as exercise of specific jurisdiction is warranted here.

As the Fifth Circuit has emphasized, the burden of establishing a personal jurisdiction over a non-resident lies with the plaintiff.[88]  Plaintiff has not carried that burden here.

### 2.    *Fair and Reasonable*

The Court further considers whether exercise of personal jurisdiction over Bachadakis would be unreasonable.  This inquiry requires examination of five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the

---

around the same period.  *See* R. Doc. 167-2 at 4 ¶ 11.  Again, these contacts post-dated CCM's final investment, so it is unclear how they can be related to CCM's claims.

[86] *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

[87] *See, e.g., id.* at 313 (5th Cir. 2007), *Meeks+Partners Co. v. Amrit Development, Inc.*, No. 07-1933, 2009 WL 1065108, at *7 (S.D. Tex. Jan. 26, 2009).

[88] *In re Chinese-Manufactured Drywall Prods. Lib. Litig.*, 753 F.3d 521, 529 (5th Cir. 2014).

plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies."[89]

Here, the factors cut against exercising personal jurisdiction over Bachadakis. As described in his affidavit, Bachadakis is a citizen of Greece and a resident of Germany.  Current pandemic travel restrictions notwithstanding, there is generally a significant burden on an individual[90] to have to defend against a suit in a foreign country with which he or she has limited contacts.[91]  Further, "the plaintiff's interest in securing relief" also weighs against exercise of personal jurisdiction, as Plaintiff named various other Defendants (virtually all of whom are represented by the same insurer).[92]  Admittedly, the other factors weigh in favor of the exercise of personal jurisdiction.  Specifically, the Court notes that Louisiana certainly has an interest in preventing its citizens from harm from allegedly false statements that violate federal and state securities laws.  But on these facts, the Court finds that this interest does not outweigh the burden on forcing Bachadakis to defend this suit in Louisiana, particularly given the host of other Defendants CCM named in its Complaint. Accordingly, exercise of personal jurisdiction over Bachadakis would be unfair and unreasonable.

---

[89] *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006).

[90] This analysis would be different were the party over which Plaintiff sought to exercise personal jurisdiction a corporation rather than an individual.

[91] *See, e.g., Ainsworth v. Cargotec USA, Inc.*, No. 10-236, 2011 WL 1814111, at *5 (S.D. Miss. May 9, 2011).

[92] Although the Court does not consider the merits at the threshold issue of personal jurisdiction, the Court's finding that Plaintiff fails to state a claim would add yet another reason why this factor weighs against the exercise of personal jurisdiction.

### C.   Leave to Amend

Plaintiff requests leave to amend its Complaint should the Court find that a pleading deficiency exists.  CCM states:

> Should the court determine that a pleading deficiency exists, CCM requests that it be permitted leave to amend to include the new allegations and evidence it has learned of Bachadakis's seemingly co-extensive involvement in the fraud with Wilhite (although we note again that apportionment is reserved for trial).  In addition, CCM reserves its right to present additional evidence that it could not include for brevity if the Court determines that a trial on jurisdiction is warranted.[93]

Generally, "[t]he court should freely give leave when justice so requires."[94] However, "[i]t is within the district court's discretion to deny a motion to amend if it is futile."[95]  An amendment is futile when "the amended complaint would fail to state a claim upon which relief could be granted."[96]   Here, an amendment would undoubtedly be futile in light of the Court's contemporaneous Order dismissing Plaintiff's Complaint.  But even were that not the case, the Court would not grant leave to amend.  Bachadakis already filed a Motion to Dismiss for lack of personal jurisdiction.[97]  Plaintiff subsequently was offered a chance to amend its Complaint, which it did.[98]  Bachadakis refiled his Motion to Dismiss.[99]  Plaintiff then sought leave to conduct jurisdictional discovery, which the Court allowed.[100]   Plaintiff's

---

[93] R. Doc. 117 at 8 n.3.
[94] Fed. R. Civ. P. 15(a)(2).
[95] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).
[96] *Id.*
[97] R. Doc. 42.
[98] R. Doc. 74.
[99] R. Doc. 83.
[100] R. Doc. 107; R. Doc. 109.

response includes the fruits of that discovery, and the Court has no reason to think that Plaintiff has not already put forth its strongest argument for jurisdiction over Bachadakis.  Plaintiff speaks of additional evidence it could include to highlight its claims of jurisdiction over Bachadakis,[101] but Plaintiff has already included hundreds of pages of documents it hand-picked to argue that this Court has jurisdiction over Bachadakis.  The Court doubts that additional evidence or discovery[102] would move the needle any further toward the exercise of jurisdiction.  Accordingly, leave to amend is denied.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Dismiss is **GRANTED**.

New Orleans, Louisiana, March 31, 2021.

_____
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**

---

[101] R. Doc. 117 at 8 n.3.

[102] The Court notes that CCM maintains that there were deficiencies in Bachadakis's jurisdictional discovery, including his failure to produce documents related to separate entities or financial records evidencing payments by Sqor and its subsidiaries to him or his related third parties.  *See* R. Doc. 177 at 15 n.11.  The Court does not find that this additional discovery would be likely to change the outcome of this dispute.  Indeed, the parties have engaged in extensive discovery on the limited subject of whether Bachadakis is subject to personal jurisdiction, and the documents in the record have failed to persuade the Court that it has jurisdiction over Bachadakis.